UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CRIMINAL NO. 08-CR-057-05** |
| v. | |
| **JAIME GONZALEZ-DURAN,**<br>**ALSO KNOWN AS "Hummer,"** | |
| Defendant. | |

**GOVERNMENT'S MEMORANDUM FOR PRE-TRIAL DETENTION**

The United States respectfully moves to detain the Defendant, Jaime Gonzalez-Duran, also known as "Hummer," pending trial, pursuant to 18 U.S.C. § 3142(e)(1). The Defendant is a high-level member of an international drug trafficking organization ("DTO") that was engaged in violence. As discussed below, the Defendant is charged with drug trafficking offenses that carry a presumption that no condition or combination of conditions will sufficiently guarantee the Defendant's presence in court and protect the safety of the community. Further, the Defendant faces significant jail time, including a mandatory minimum sentence of ten years; potentially has access to substantial amounts of drug proceeds in the form of untraceable cash; has no immigration status in the United States; and is subject to an immigration detainer. Accordingly, the Defendant presents a serious risk of flight and danger to the community that cannot be mitigated by any condition or combination of conditions and should be detained pending trial.

## BACKGROUND

On August 12, 2009, the United States District Court for the District of Columbia issued an arrest warrant for Gonzalez Duran based on an indictment in this case. On May 9, 2013, a grand jury sitting in the District of Columbia returned and filed a Fourth Superseding Indictment (the "Indictment") against the Defendant and 25 co-defendants expanding the time frame of the criminal activities and charging him with one count of conspiracy to manufacture and distribute cocaine and marijuana, intending and knowing that the cocaine and marijuana would be unlawfully imported into the United States, in violation of 21 U.S.C. §§ 959(a), 960, and 963.

The Indictment is the product of an extensive, long-term, and ongoing investigation conducted by the Drug Enforcement Administration ("DEA") into the drug-trafficking activities of the Gulf Cartel and Los Zetas, two related drug-trafficking organizations ("DTOs") operating in Mexico. The Government anticipates that the evidence at trial will show that the Defendant, who was arrested in November of 2008 in Mexico, was part of a larger, complex transnational narcotics conspiracy from June 2000 until February of 2010. The ultimate objective of the conspiracy was to import narcotics, namely cocaine and marijuana, into the United States.

If this case proceeds to trial, the Government's evidence at trial is expected to consist of testimony from cooperating witnesses with direct communications with the Defendant to discuss drug trafficking and drug trafficking related activities and audio recordings of the Defendant and others engaged in drug-trafficking related conversations. This evidence will show that the Defendant was a high-ranking member of the Los Zetas, a DTO allied with the Gulf Cartel DTO. Collectively the organizations were known as "The Company." The Defendant held important

leadership roles within the Los Zetas, controlling drug trafficking activities within his areas of responsibility.

The Gulf Cartel is a violent Mexican criminal organization engaged in the manufacture, distribution, and importation of large quantities of cocaine, methamphetamine, and marijuana into the United States, among other illegal activities. In the late 1990s, the Gulf Cartel recruited an elite group of former Mexican military personnel to join their ranks as security and enforcers, who became known as Los Zetas. The Company controlled hundreds of miles of Mexican territory along the border of Mexico and the United States. The Company divided its territory into areas known as "plazas" and assigned a leader, known as a "plaza boss." The Company transported large cocaine shipments via boats, planes, and motor vehicles from Colombia and Venezuela to Central America, and then to various plazas in Mexico. The Company also transported large quantities of marijuana grown in Mexico to plazas using motor vehicles. The Company then transported the shipments of cocaine and marijuana from Mexico to the United States for distribution. During his membership in Los Zetas, he was a "plaza boss" in the cities of Reynosa and Miguel Aleman, directing Los Zetas's drug-trafficking activities in those areas.

The Defendant has no legal immigration status in the United States. The United States is not aware of any contacts the Defendant maintains in this District or in the United States, other than any co-conspirators related to the Indictment.

## ARGUMENT

## The Bail Reform Act

Under the Bail Reform Act, 18 U.S.C. §§ 3141 *et seq.*, federal courts must order a defendant's pre-trial detention upon determining that "no condition or combination of conditions

3

would reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e). A finding of dangerousness must be supported by clear and convincing evidence. 18 U.S.C. § 3142(f); *see United States v. Simpkins*, 826 F.2d 94, 96 (D.C. Cir. 1987). A finding of risk of flight must be supported by a preponderance of the evidence. *Simpkins*, 826 F.2d at 96. If the Court finds that no conditions will reasonably assure both the appearance of the defendant and the safety of any other person and the community, he or she shall order the defendant detained. 18 U.S.C. § 3142(e)(1). Thus, detention is appropriate where a defendant is either a danger to the community or a flight risk; it is not necessary to prove both.

The Bail Reform Act lists the following four factors as relevant to the determination of whether detention is appropriate: (1) the nature and circumstances of the crimes charged, (2) the history and characteristics of the defendant, (3) the seriousness of the danger posed by the defendant's release, and (4) the evidence of the defendant's guilt. *See* 18 U.S.C. § 3142(g).

## **Statutory Presumption of Dangerousness and Risk of Flight**

Under 18 U.S.C. § 3142(e)(3)(A), there is a rebuttable presumption that no conditions or combination of conditions will assure as to both flight risk and danger if the defendant is charged with a Controlled Substances Act offense with a statutory maximum of 10 years or more. In this case, in count one of the Indictment, the Defendant is charged with an offense for which the maximum term of imprisonment is life as prescribed by the Controlled Substance Act. As the penalty of life imprisonment is more than 10 years, the presumptions of Section 3142(e) apply here.

An indictment charging a qualifying offense, as is the case here, is sufficient to trigger this rebuttable presumption. *United States v. Smith*, 79 F.3d 1208 (D.C. Cir. 1996); *United States v. Mosuro*, 648 F. Supp. 316, 318 (D.D.C. 1986). When the presumption is triggered, it operates "at a minimum to impose a burden of production on the defendant to offer some credible evidence contrary to the statutory presumption." *United States v. Alatishe*, 768 F.2d 364, 371 (D.C. Cir. 1985). However, the presumption is not erased when a defendant proffers evidence to rebut it; rather the presumption remains as an evidentiary finding militating against release and to be weighed along with all the evidence relating to the factors listed in Section 3142(g). *See United States v. Cherry*, 221 F. Supp. 3d 26, 32 (D.D.C. 2016) (citing *United States v. Ali*, 793 F. Supp. 2d 386, 391 (D.D.C. 2011) and *United States v. Dominguez*, 783 F.2d 702, 707 (7th Cir. 1986)). In other words, "it does not follow that the effect of the presumption disappears as soon as the defendant produced some contrary evidence. Congress framed the flight presumption in light of its general finding, based on extensive testimony, that flight to avoid prosecution is particularly high among those charged with major drug offenses." *United States v. Martir*, 782 F.2d 1141, 1144 (2d Cir. 1985); *see also Cherry*, 221 F. Supp. 3d at 32; *Ali*, 793 F. Supp. 2d at 391. For all of the reasons addressed below, the Defendant will be unable to satisfy his burden to rebut the presumption that no condition or combination of conditions will reasonably assure the appearance of the Defendant and the safety of the community.

### **Nature and Circumstances of the Offenses Charged**

The weight of the evidence against the Defendant is strong. The Defendant was a member of a Los Zetas, a Mexican DTO, which operated jointly with another DTO, the Gulf Cartel, under the name The Company. The Company had a significant distribution network to

5

transport wholesale quantities of cocaine from Colombia, before its importation into Mexico and the United States. The DTO used a variety of transportation means to distribute its cocaine, including maritime vessels and airplanes.

From at least 1999 to approximately 2010, The Company financed, purchased, transported and distributed cocaine and marijuana destined for the United States. The Company shipped cocaine from Colombia to Mexico where the cocaine was stored until it was loaded onto tractor trailers for transportation into the United States. In addition, The Company imported Mexican-grown marijuana into the United States. The Defendant oversaw The Company's drug trafficking in Mexico and directly aided their activities into and within the United States. The Defendant held the position of plaza boss in the Mexican cities of Reynosa and Miguel Aleman. Los Zetas also used extreme violence to further and protect their drug-trafficking activities.

## History and Characteristics of the Defendant

The Defendant's prior history and characteristics establish his risk of flight in this case. A determination of risk of flight must be supported only by a preponderance of the evidence. *United States v. Xulam*, 84 F.3d 441, 442 (D.C. Cir. 1996). Here, there is a significant risk of flight in this case due to the potential sentence the Defendant faces, as well as his lack of ties to this District or the United States.

The possibility of a severe sentence is an important factor in assessing a defendant's incentive to flee. *See United States v. Hong Vo*, 978 F. Supp. 2d 41, 43 (D.D.C. 2013) (holding the nature and circumstances of the offenses charged against defendant strongly favor detention because of the substantial incentive to flee the United States); *United States v. Anderson*, 384 F.Supp.2d 32, 36 (D.D.C. 2005) (holding the gravity of the offenses and the potential prison term

create a considerable incentive for the defendant to avoid prosecution and the likelihood of imprisonment in the event of a conviction); *see also United States v. Ali*, 793 F. Supp. 2d at 392. As discussed above, the Defendant faces a mandatory minimum sentence of 10 years if convicted on the count charged in the Indictment.

Federal courts have repeatedly recognized that "[f]light to avoid prosecution is particularly high among persons charged with major drug offenses," because "drug traffickers often have established ties outside the United States . . . [and] have both the resources and foreign contacts to escape to other countries." *See, e.g., Alatishe*, 768 F.2d at 370 n.13 (citing S. Rep. No. 98-225 at 20 (1983), reprinted in 1984 U.S.C C.A.N. 1, 23). This is nowhere more evident than in the type of transnational organized crime in which the Defendant has engaged. The Company, an organization engaged in a transnational drug conspiracy, moved drugs across two continents, spanning multiple countries and it generated millions of dollars in gross proceeds from the sale of cocaine and marijuana. Indeed, "Congress made 'risk of flight' grounds for detention because it believed that there were major drug dealers to whom the posting and losing of even large amounts of money bond were not a deterrent, but a mere cost of doing business." *United States v. Battle*, 59 F.Supp.2d 17, 19 (D.D.C. 1999).

At the time of his arrest in Mexico in November of 2008, authorities found him hiding in a hidden compartment in his bed. In another compartment in the headboard, authorities found over a million dollars in cash, a handgun and multiple phones and SIM cards demonstrating an intent and a capacity to evade law enforcement. On the day of his arrest, elements loyal to the Defendant violently confronted the authorities holding him in an unsuccessful attempt to secure

his release. The Defendant also contested extradition from Mexico for many years following his arrest.

Additionally, as discussed above, the Defendant is a Mexican citizen and has no immigration status in the United States. If released on bond, the Defendant will be placed in immigration custody pending removal from the country.

Further, there is a serious risk that the Defendant would attempt to leave the United States if given the opportunity. He has no known lawful contacts in this federal district or to the United States and thus, no reason to remain in this country. Furthermore, the Defendant has no known assets, no employment, no property, and no immediate family here. The Defendant has been brought here under the authority of this Court solely for the purpose of federal prosecution. In short, the Defendant has no reason to remain in this country other than this criminal case, and he therefore represents an overwhelming risk of flight if released from custody. Furthermore, the Government is not aware that the Defendant has any contacts in the United States, other than possibly knowing individuals allegedly involved in the drug trafficking conspiracy. As such, the Defendant has no ties to the community to assure his appearance.

In sum, the Defendant has the means, motive, and opportunity to flee the country and should be detained without bail. *See Hong Vo*, 978 F. Supp. 2d at 43 (finding detention warranted because not only was defendant indicted on serious charges carrying a severe punishment potential, but defendant had ability to flee the United States); *see also Anderson*, 384 F. Supp. 2d at 36 (finding detention warranted because not only did the defendant have the ability to flee D.C. and the United States, but also had the ability to live comfortably in foreign jurisdiction and evade capture due to his substantial assets abroad).

## Safety of the Community

A determination of dangerousness to the community must be supported by clear and convincing evidence. 18 U.S.C. § 3142(f). Federal courts have recognized that drug traffickers, particularly those in positions of authority, are likely to continue engaging in drug related activities if released on bail and thus constitute a danger to the community. *See, e.g., Alatishe*, 768 F.2d at 370 n.13 (citing S. Rep. No. 98-225 at 20 (1983), reprinted in 1984 U.S.C C.A.N. 1, 23); *accord United States v. Creekmore*, 1997 W.L. 732435 (D.D.C. 1997) (Facciola, J.). The Defendant allegedly participated in an international drug transportation and distribution organization which imported cocaine, a dangerous controlled substance, into the United States for distribution to the United States public at large. If he were released and continued in this conduct, he would pose a significant risk to the safety of the community, both here in the United States and abroad. Evidence to be presented will also establish that the Defendant ordered the rivals or threats to his drug trafficking business to be murdered.   Specifically, in May 2007, the Defendant was intercepted on a court authorized wiretap discussing the intentional drowning of an unidentified individual who was caught stealing from the Defendant. The Defendant ordered a subordinate to intentionally get the individual drunk, secure the individual in a vehicle and push the vehicle into a flooded water canal so that the individual would appear to have drown after an accident.

## Weight of the Evidence

Where the evidence of guilt is strong, it provides a considerable additional incentive to flee. *See United States v. Medina*, 255 F. Supp. 2d 3, 4 (D.D.C. 2006) (finding detention

warranted because government's evidence was strong against the defendant); *see also United States v. Vergara*, 612 F. Supp. 2d 36, 37 (D.D.C. 2009).

The evidence against the Defendant here is overwhelming. The evidence includes testimony from foreign law enforcement about narcotic and money seizures in Mexico and Texas. In May 2007, the Defendant was intercepted on court authorized intercepts coordinating the crossing of $1,449,860.00 in U.S. currency into Mexico from McAllen, Texas. The conversation is corroborated by audio recordings of meetings with the Defendant and others regarding the conspiracy and multiple individuals with personal knowledge of the Defendant's role in this international drug trafficking conspiracy who are prepared to testify.

Given the strength of the evidence against him, there is no condition or combination of conditions that would assure the Defendant's appearance in court or the safety of the community.

**WHEREFORE**, for the foregoing reasons, the Government submits that the Defendant should be detained pending trial.

Respectfully submitted this 21 day of October 2022.

                        ARTHUR WYATT, Chief
                        Narcotic and Dangerous Drug Section
                        Criminal Division
                        United States Department of Justice

By:    */s/ Kirk Handrich*
            Kirk Handrich
            Janet Turnbull
            Melanie Alsworth
            Trial Attorneys
            Narcotic and Dangerous Drug Section
            Criminal Division
            United States Department of Justice
            145 N Street, Northeast
            East Wing, Second Floor
            Washington, D.C. 20530
            (202) 514-0422
            Kirk.Handrich@usdoj.gov

## CERTIFICATE OF SERVICE

      I hereby certify that a copy of the foregoing Government's Memorandum for Pretrial Detention was filed on October 21, 2022. I further certify that the Government has also provided a copy of this memorandum to defense counsel of record, Shelli Peterson, Esq, via e-mail.

By:    */s/ Kirk Handrich*
Kirk Handrich
Trial Attorney
Narcotic and Dangerous Drug Section
Criminal Division
United States Department of Justice