**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** )<br>)<br>v.  )<br>)<br>**JAIME GONZALEZ-DURAN,** )<br>also known as )<br>"Hummer," )<br>)<br>**Defendant.** ) | **Case No. 08-CR-057 (TNM)** |

## JOINT STATEMENT OF STIPULATED FACTS

The statement of facts does not purport to include all the Defendant's illegal conduct during the charged offense, nor is it intended to represent all the Defendant's relevant conduct for sentencing purposes. The statement of facts does not constitute an inclusive recitation of all that the Defendant heard, knew, or witnessed concerning the illegal activities of himself or those of his conspirators. It instead represents sufficient information for the Court to find a factual basis for accepting the Defendant's guilty plea in the above-captioned matter. Had the Defendant proceeded to trial, the Defendant agrees that the Government's evidence would show the following beyond a reasonable doubt:

1.  Beginning in or about 2000, and continuing until November 2008, in Mexico and elsewhere, the Defendant was a member of a conspiracy, the object of which was to manufacture and distribute five kilograms or more of cocaine and one thousand kilograms or more of marijuana, intending and knowing that such substances would be unlawfully imported into the United States, in violation of 21 U.S.C. §§ 959(a), 960, and 963.

2.  During the course and in furtherance of the conspiracy alleged in the Fourth Superseding Indictment, the Defendant admits that he was a high-ranking member of "Los Zetas,"

a drug trafficking organization ("DTO") comprised of former Mexican military officers allied with the Gulf Cartel.

3. The Gulf Cartel was a violent Mexican criminal organization engaged in manufacturing, distributing, and importing large quantities of cocaine and marijuana into the United States, among other illegal activities. "Los Zetas" first served as an armed militaristic wing for the Gulf Cartel to maintain control of drug trafficking routes throughout Mexico. Between 2000 and 2010, the Gulf Cartel and Los Zetas formed an alliance and operated collectively under the name "The Company."

4. The Company controlled hundreds of miles of Mexican territory along the border of Mexico and the United States. The Company divided its territory into areas known as "plazas" and assigned a leader, known as a "plaza boss." Using boats, planes, and motor vehicles, The Company transported large cocaine shipments from Colombia and Venezuela to Central America, and then to various plazas in Mexico. The Defendant oversaw aspects of The Company's drug trafficking in Mexico and directly aided their activities into and within the United States.

5. Specifically, The Company had a significant distribution network to transport wholesale quantities of cocaine from Colombia, before its importation into Mexico and the United States. The Company used its control of strategic locations on the border between Mexico and the United States—including in Miguel Aleman, Reynosa, and Nuevo Laredo, which border Roma, Hidalgo, and Laredo, Texas, respectively—to import tonnage quantities of cocaine and marijuana into the United States. The Company shipped cocaine from Colombia to Mexico where the cocaine was stored until it was loaded onto tractor trailers for transportation into the United States. The Company also transported large quantities of marijuana grown in Mexico to plazas using motor vehicles. The Company then transported the shipments of cocaine and marijuana from

Mexico to the United States for distribution.

6. The Defendant was an original member of Los Zetas, having deserted the Mexican military in approximately 1998. The Defendant started working for the DTO in Miguel Aleman and, in 2002, became a bodyguard for one of its leaders. The Defendant gained status in the organization, ultimately holding important leadership roles and controlling drug trafficking activities for the DTO within specific areas. Between 2003 and 2004, the Defendant supervised approximately 20 other DTO members in Matamoros, Mexico, on the border of Brownsville, Texas. During this time, the DTO crossed cocaine into the United States from Mexico through the use of tractor trailers across international bridges. Marijuana was also crossed through the Rio Grande River.

7. The Defendant was later the plaza boss in the city of Miguel Aleman, directing The Company's cocaine and marijuana-trafficking activities through and in that area. As part of plaza operations, the Defendant bribed or attempted to bribe law enforcement officers to ensure drug loads would not be disturbed. The Defendant later became the regional commander of Nuevo Laredo, Miguel Aleman, and Reynosa for Los Zetas, and he supervised dozens of DTO members in these areas.

8. In these roles, the Defendant was personally responsible for the importation of more than 450 kilograms of cocaine and 90,000 kilograms of marijuana. The Defendant was intercepted on phone calls discussing marijuana and cocaine purchases and the prices for drug purchases at the United States/Mexico border. The Defendant sold controlled substances on behalf of The Company and personally invested in drug loads. Most of the controlled substances distributed by The Company were ultimately destined for and crossed into the United States. As a plaza boss, the Defendant also taxed other shipments of illegal drugs that crossed through territory controlled

by The Company, often to enter the United States.

9. The Defendant regularly wore body armor and carried weapons when conducting Company business. The Defendant also routinely stored and transported weapons. For example, the Defendant was personally responsible for maintaining the warehouse in Reynosa that Mexican authorities seized in November 2008 and from which authorities seized a cache of 540 rifles, 165 grenades, 500,000 rounds of ammunition, and 14 sticks of TNT. The Defendant knew that the weapons, explosives, and ammunition he stored and transported were used by The Company to secure its territory and its drug shipments.

10. The Defendant was also responsible for maintaining multiple locations to store drugs and money on behalf of Los Zetas. Together, these locations regularly stored varying amounts of marijuana, cocaine, United States Currency, and weapons, all belonging to the Gulf Cartel.

11. The Defendant was also involved in smuggling the financial proceeds of drug trafficking from sales in the United States back into Mexico. In a telephone call intercepted in May 2007, for example, the Defendant and a co-conspirator discussed coordinating the crossing of $1,449,860.00 in U.S. currency into Mexico from McAllen, Texas.

12. Separately, on October 5, 2007, Mexican law enforcement seized approximately 10 metric tons of cocaine from a warehouse in Tampico, Tamaulipas, Mexico. This cocaine belonged to The Company and its associates, including the Defendant.

13. The Defendant and members of The Company participated in acts of violence against rival drug trafficking groups during conflicts for control over drug plazas and trafficking routes. These acts of violence involved the use of weapons, including the weapons that the Defendant stored and transported.

14. The Defendant admits that the total weight of controlled substances involved in this conspiracy that was directly attributable to him is more than 450 kilograms of cocaine and more than 90,000 kilograms of marijuana. The Defendant admits that he knew the cocaine and marijuana would be illegally imported into the United States for further distribution.

15. The Defendant agrees venue and jurisdiction lie with this Court pursuant to 18 U.S.C. § 3238.

16. The Defendant also agrees that his participation as a conspirator in the above-described acts were in all respects knowing, intentional, and willful, reflecting an intention and deliberation to do something the law forbids, and were not in any way the product of any accident, mistake of law or fact, duress, entrapment, or public authority.

17. With his signature below and that of his counsel, the Defendant agrees that he has fully adopted this statement of facts as his own statement. The Defendant is adopting this statement of facts because it is a true and correct summary of the Defendant's own conduct.

18. The Defendant is pleading guilty because the Defendant is in fact guilty.

Respectfully submitted,

MARLON COBAR
Chief
Narcotic and Dangerous Drug Section
Criminal Division
U.S. Department of Justice

Date: 02/28/25

By: _____
JAYCE BORN
TARA ARNDT
Trial Attorneys

Approved by:
Date: 2/25/25

By: _____
MELANIE L. ALSWORTH
Acting Deputy Chief of Litigation

## DEFENDANT'S ACKNOWLEDGMENT

I have reviewed this Statement of Facts with the assistance of an English-Spanish interpreter, and have discussed it at length with my attorney, Manuel J. Retureta, Esq. This Statement of Facts has been translated into Spanish for me. I understand that the English version controls. I fully understand this Statement of Facts and agree to it without reservation. I do this voluntarily and of my own free will, intending to be legally bound. No threats have been made to me, nor am I under the influence of anything that could impede my ability to understand this Statement of Facts fully.

I reaffirm that absolutely no promises, agreements, understandings, or conditions have been made or entered into in connection with my decision to plead guilty except those set forth in the accompanying Plea Agreement dated February 20, 2025. I am satisfied with the legal services provided by my attorney in connection with this Statement of Facts, the accompanying Plea Agreement, and all matters related to it.

_____          2.21.25
JAIME GONZALEZ-DURAN                     Date
Defendant

## ATTORNEY'S ACKNOWLEDGMENT

I am the Defendant's attorney. I have fully explained to the Defendant, through an English-Spanish interpreter, the Defendant's rights and the applicable provisions of the Sentencing Guidelines. I have carefully reviewed every part of this Statement of Facts with the Defendant. The Defendant is agreeing to this Statement of Facts voluntarily, intelligently, and with full knowledge of all consequences of the Defendant's plea of guilty.

_____          2.21.25
MANUEL J. RETURETA, ESQ.                 Date
Attorney for Defendant