UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA

v.

JAIME GONZALEZ DURAN,
                    Defendant.

Crim. Action No. 08-cr-00057-TNM-5

DEFENDANT'S MEMORANDUM IN AID OF SENTENCING

COMES NOW DEFENDANT, JAIME GONZALEZ DURAN, by and through undersigned counsel, and respectfully submits this Memorandum In Aid of Sentencing. Mr. Gonzalez Duran herein presents authority and argument regarding the advisory U.S. Sentencing Guidelines and the statutory sentencing factors of 18 U.S.C. § 3553(a). This memorandum respectfully offers the Court information and authority so the Court may fashion and "impose a sentence sufficient, but not greater than necessary," to comply with the purposes of sentencing. 18 U.S.C. § 3553(a).

*Concise Sentencing Argument*

Mr. Gonzalez Duran appears before this Court for sentencing having recently turned 49 years old. Presentence Report (PSR), p.3. On the day of sentencing, he will have served approximately 16 years and 7 months of continuous incarceration related to his role as a member of the Zetas drug cartel. The issues presented and discussed in this memorandum, warrant sentencing mitigation; namely: his full acceptance of responsibility and recognition of guideline enhancements; and the jail time he has already served – both internationally and locally.

1

*Case Background & Time Served*

On March 13, 2008 , a grand jury in Washington, D.C. returned a three-count indictment against Mr. Gonzalez Duran, and ten codefendants,  The indictment alleged participation in a drug distribution and importation conspiracy from 2006 to 2008.  ECF 3.  Later that year, Mr. Gonzalez Duran was arrested in Mexico, on November 7, 2008.  PSR, p.2.

Since the day of his arrest in 2008, Mr. Gonzalez Duran remained detained continuously in Mexico until his extradition to the United States which took place on October 22, 2021.  As noted previously, Mr. Gonzalez Duran has now served 16 years and 7 months of incarceration for the conduct alleged in his indictment.

*Time In The Conspiracy*

The indictment leading to the arrest and extradition of Mr. Gonzalez Duran is dated March 13, 2008.  ECF 3.  It encompasses illegal conduct dating back to June of 2006.  This begins Mr. Gonzalez Duran's legal exposure.[1]  However, with his arrest on November 7, 2008, he ended his time in the alleged conspiracy – in other words, he withdrew from the conspiracy.  Therefore, Mr. Gonzalez Duran only participated in the alleged conspiracy for approximately 30 months.  See Footnote 1.

As noted above, Mr. Gonzalez Duran has been in continuous imprisonment since November 7, 2008.  Accordingly, Mr. Gonzalez Duran respectfully asks the

---

[1] Although superseding indictments issued in the years after 2008, the March 13, 2008, indictment set in motion the collaborative efforts by U.S. and Mexican authorities to arrest and subsequently extradite Mr. Gonzalez Duran.  The next superseding indictment (ECF 6) issued in June of 2009 (post arrest of Mr. Gonzalez Duran) and also referenced the conspiracy start-date of June 2006.

2

Court to consider a departure/variance for his entire time spent detained, pending extradition in Mexico and while detained in the United States. This argument is set forth below.

*Downward Departure and/or Downward Variance*

As noted above, Mr. Gonzalez Duran was arrested on November 7, 2008, in Mexico. Yet, the extradition request by the United States, reportedly, was not presented to the Mexican government until 2015.[2] Normally, "time-served" calculations by the Bureau of Prisons (BOP) only credits international defendants jail-time from the moment that an extradition request is presented to the other country. In Mr. Gonzalez Duran's case, and accepting government representations (See Footnote 2), such a calculation would mean that approximately 7 years of time spent incarcerated would not be counted by the BOP. Mr. Gonzalez respectfully submits that this would not produce a just sentence because the U.S. and Mexico worked hand-in-hand to arrest, detain, and extradite Mr. Gonzalez Duran.

The circumstances surrounding Mr. Gonzalez Duran's investigation and arrest in Mexico reveal a joint effort by the United States and Mexico to arrest and detain members of the Zetas Cartel with the intent to extradite them to the United States. This effort began prior to Mr. Gonzalez Duran's extradition, prior to the submission of the extradition request in his case, prior to his arrest in November of 2008, and prior to the indictment in early 2008. Therefore, it would be appropriate to consider

---

[2] The defense has not been presented with the extradition material. Therefore, this argument rests upon the representations of government counsel. We ask that at sentencing, the government provide the Court with documentation related to the extradition request by the U.S. to Mexico.

and give credit for the time spent by Mr. Gonzalez Duran detained – from November 7, 2008, to the day of sentencing.

*U.S. "Coordinated" Action Against the Zeta Cartel*

It is clear that the U.S. worked hand-in-hand with the Mexican government to investigate, identify, charge, and apprehend Zeta members, including Mr. Gonzalez Duran. This effort resulted in the March 2008 indictment lodged against Mr. Gonzalez Duran and 10 codefendants. However, lodging the indictment was only one prong of a multi-prong effort by various U.S. law enforcement agencies to find, arrest, and extradite members of the Zetas.

Approximately seven months after Mr. Gonzalez Duran's arrest in Mexico, the U.S. government – including the Departments of Justice, State and Treasury - announced "coordinated" efforts against the Zetas. In the press release accompanying the action, Assistant Attorney General Lanny A. Breuer stated:

> "Today's coordinated actions by the Departments of Justice, State and Treasury will serve not only to bring these individuals to justice, but also to significantly slow the flow of cash that is so vital to cartel operations. ***These actions are also the result of our strong partnership with Mexican Attorney General Medina Mora, Secretary of Public Security Garcia Luna and other Mexican officials. We stand shoulder-to-shoulder with our brave Mexican colleagues in the fight against these destructive cartels."***

Press Release – "Alleged Mexican Cartel Leaders, Associates Targeted in Newest Effort to Combat Drug Trafficking Organizations" dated July 20, 2009

https://www.justice.gov/archives/opa/pr/alleged-mexican-cartel-leaders-associates-targeted-newest-effort-combat-drug-trafficking (Emphasis added).

4

The "strong partnership" referenced above was key to Mr. Gonzalez Duran's arrest. In December of 2008 there was reporting that a U.S. extradition request was already submitted to the Mexican government. The newspaper "Publico" reported that "González Durán is facing an extradition request, *which the U.S. government requested months ago*, alleging involvement in organized crime and cocaine trafficking." "https://www.publico.es/internacional/zetasbanquillo.html#google_vignette (Emphasis added).

The link between Mr. Gonzalez Duran's arrest in November of 2008 and U.S. involvement was later described as "coordinated:"

> "**November 7, 2008, Jaime Gonzalez-Duran was taken into custody by the Secretaria de Seguridad Publica in coordination with DEA.** Gonzales-Duran was the third highest ranking member of the Gulf Cartel who controlled day-to-day operations for the Cartel. He reported directly to high level Cartel member Miguel Trevino-Morales and CPOT Heriberto LAZCANO-Lazcano. Gonzalez-Duran was indicted on March 13, 2008 in the District of Columbia.

Bureau Of International Narcotics And Law Enforcement Affairs, 2009 International Narcotics Control Strategy Report (INCSR), Report February 27, 2009, https://2009-2017.state.gov/j/inl/rls/nrcrpt/2009/vol1/116517.htm (Emphasis added). See also: https://2009-2017.state.gov/documents/organization/120054.pdf , at p.51.

In 2009, the DEA Acting Administrator talked of the "resolute partnership between the DEA and Mexican law enforcement" and specifically referenced Mr. Gonzalez Duran when he stated:

> To date, *Project Reckoning* has disrupted the Gulf Cartel by targeting distribution networks in the United States and Europe. Over 600 individuals have been arrested, and 17 metric tons of cocaine have been seized, along with $72 million in U.S. currency. ***In March 2009, the U.S. announced it would invest $700 million to enhance Mexican law enforcement and judicial capacity, in addition to enhancing***

5

>*our coordinated efforts.* In February 2009, DEA culminated an 11-year investigation that led to the extradition of Miguel Angel Caro Quintero, a leader in the Guadalajara/Sonora Cartels. *Operation Xcellerator* culminated in February 2009, connecting the dots to 70 distribution networks of the Sinaloa Cartel across the United States. This was the biggest operation against the cartel and its networks ever, resulting in over 750 arrests and the seizure of over 12,000 kilograms of cocaine and nearly $60 million in U.S. currency. In 2008, the Government of Mexico extradited a record 95 criminals to the United States, surpassing the 2007 record of 83. ***In November 2008, DEA coordinated with Mexican police in the arrest of Jaime Gonzalez-Duran, the third-highest ranking member of the Gulf Cartel.***

https://www.dea.gov/sites/default/files/divisions/hq/2009/pr080309p.html (Emphasis added).

The linkage between the U.S. and Mexico, during the time period where Mr. Gonzalez Duran was arrested is further highlighted by the DEA Acting Administrator, when testifying before Congress only a few months after the arrest:

>Project Reckoning is an ***ongoing multi-operational initiative targeting the Gulf Cartel***. The Gulf Cartel and its former enforcement arm, known as the Zetas, are responsible for a large proportion of the drug-related violence in Mexico and, like the rival Sinaloa Cartel, are responsible for bringing multi-ton quantities of cocaine and marijuana from Mexico into the United States. ***To date, Project Reckoning has led to the arrest of 632 individuals, the indictment of the entire upper echelon of the Gulf Cartel, including Jaime Gonzalez Duran, aka "Hummer…"***

*Statement Of The Honorable Michele Leonhart, Acting Administrator Drug Enforcement Administration Before The United States House Committee On Appropriations Subcommittee On Commerce, Justice, Science And Related Agencies* March 26, 2009   https://www.dea.gov/sites/default/files/pr/speeches-testimony/2012-2009/ct032609.pdf (Emphasis added).

Later in March of 2010, the expanse of U.S. action against Mr. Gonzalez Duran and the Zetas was announced in the press release below which also highlighted the "collaborative" nature of the U.S./Mexico relationship in Mr. Gonzalez Duran's case:

> WASHINGTON – On the heels of Tuesday's U.S. - Mexico Merida High Level Consultative Group meeting in Mexico City, the U.S. Department of the Treasury's Office of Foreign Assets Control (OFAC) today designated 54 Mexican principal lieutenants and enforcers for Mexico's Gulf Cartel and Los Zetas – groups that are responsible for much of the current bloodshed in Mexico –as Specially Designated Narcotics Traffickers pursuant to the Foreign Narcotics Kingpin Designation Act (Kingpin Act).
>
> "The United States remains deeply committed to ***collaborating with Mexican authorities*** and President Calderon's unwavering efforts to end the brutality imposed by these ruthless criminal organizations, said OFAC Director Adam J. Szubin."
>
> Today's action is due in part to OFAC's cooperation with the Drug Enforcement Administration (DEA) and DEA's Special Operations Division and is part of ongoing efforts under the Kingpin Act to apply financial measures against significant foreign narcotics traffickers worldwide.

Press Release- Treasury Targets Perpetrators of Mexican Drug Trafficking Violence Tied to Los Zetas and the Gulf Cartel March 24, 2010  https://home.treasury.gov/news/press-releases/tg605.  See also: https://ofac.treasury.gov/recent-actions/20100324, and https://www.federalregister.gov/documents/2010/03/30/2010-6986/additional-designations-foreign-narcotics-kingpin-designation-act.

Accordingly, Mr. Gonzalez Duran requests a downward variance for the 7 years he spent detained from 2008 to 2015.  Because it is clear that BOP calculations will not include the time prior to the submission of the extradition request, and due to the joint effort to investigate, arrest, sanction, and eventually extradite Mr. Gonzalez

Duran to the U.S., it would be just to recognize the time spent *incarcerated* pending his extradition to the United States.

This issue was flagged with government counsel prior to the change-of-plea hearing in February 2025. However, government counsel did not respond to the defense request and the plea was not delayed. However, it is clear that such an issue arose with co-defendant Medina Rojas who pleaded guilty shortly after Mr. Gonzalez Duran's change of plea. In the plea agreement document for Medina Rojas the following section is included:

> Additionally, if the Court determines that the Defendant's term of 4 years, 10 months, and 50 days of imprisonment between April 19, 2007, and April 9, 2012, will not be credited by the Bureau of Prisons, ***the Government will not take a position on the Defendant's argument for a downward departure or downward variance to account for the period of incarceration.***

See Plea Agreement, Defendant Medina Rojas ECF 672, p.9 (Emphasis added). It appears that for defendant Medina Rojas a period of detention of "4 years, 10 months, and 50 days of imprisonment . . . will not be credited by the Bureau of Prisons . . . *Id.* While undersigned counsel has not been fully apprised of the circumstances surrounding this request, it appears to relate to a similar situation involving Mexican detention and the timing of the U.S. extradition request.

*Mexican Cases Pending*

In March of 2015, Mr. Gonzalez Duran was sentenced by a judge in Tamaulipas, Mexico, to a sentence of 35 years in prison for charges of kidnapping and homicide. This sentence is added to two others, imposed in 2010, carrying 16 and 21

8

years of incarceration.  Mr. Gonzalez Duran will continue to serve a prison term upon his arrival back to Mexico after concluding whatever sentence this Court imposes.

*Acceptance of Responsibility*

Mr. Gonzalez Duran accepted responsibility for his conduct and pleaded guilty on February 28, 2025.  PSR, p.7¶17.  By pleading guilty Mr. Gonzalez Duran "…agreed with the conduct described in the Statement of Offense as presented to the Court prior to his guilty plea."  PSR, p.16¶89.  As a result of his acceptance of responsibility, Mr. Gonzalez Duran's advisory sentencing guidelines were reduced by three levels due to having "clearly demonstrated acceptance of responsibility for the offense" and for having "assisted authorities in the investigation or prosecution of the [his] own misconduct by timely notifying authorities of the intention to enter a plea of guilty.  U.S.S.G. § 3E1.1(a) and (b).  Furthermore, there is no indication that he shirked his admission of responsibility, nor any allegation of obstructing justice.  PSR, pp.16¶88.

*Personal Background*

As noted previously, Mr. Gonzalez Duran is 49-years old.  PSR p.3.  Almost 17 years of his life have been spent incarcerated.  He was born and raised in Mexico; and he will return to Mexico upon completing any sentence of incarceration imposed by this Court.

Mr. Gonzalez Duran lost his mother when he was 7 years old and lived with his father, working agricultural jobs to sustain the family.  PSR, p.19¶117-118.  He shared with the U.S. Probation Officer his exposure to physical abuse at the hands of his father towards him and his siblings.  PSR, p.20¶118.  This also included alcohol

9

abuse. The broken home, the physical abuse and alcohol abuse ended with Mr. Gonzalez Duran leaving home and joining the Mexican military at the age of 14. *Id.* He then spent six years in the armed forces and began a path that led him to illegal conduct.

Mr. Gonzalez Duran has 4 children that he helped raise until his arrest in 2008. Although he could not help financially with the upbringing of his children after his arrest, to this day, he calls them daily (as allowed by jail lock-downs, or transfers). He has maintained a fatherly presence in all their lives, including the youngest child who was born after his arrest in 2008.

*Guidelines & Legal Authority*

As the Court is aware, the advisory Guidelines range now is merely one factor that the Court must consider when imposing sentence, and the Court "may not presume that the Guidelines range is reasonable." *Gall v. United States*, 552 U.S. 38, 49-50 (2007); *see also, United States v. Booker*, 543 U.S. 220 (2005). The Court is also bound to consider all of the factors identified in 18 U.S.C. § 3553(a) and to "impose a sentence sufficient, but not greater than necessary" to comply with the purposes of sentencing set forth in the statute. *See* 18 U.S.C. § 3553(a). Mr. Gonzalez Duran respectfully requests, for the reasons set forth in this memorandum that the Court vary downward, mitigate the sentence, and conclude that a sentence outside the advisory guideline range is appropriate and just.

*18 U.S.C. § 3553(a) Factors*

Section 3553(a) requires a sentencing court to impose a sentence that is "sufficient, but not greater than necessary" to comply with the purposes of federal sentencing. 18 U.S.C. §3553(a). Those purposes are the need for the sentence imposed (1) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment; (2) to afford adequate deterrence to criminal conduct; (3) to protect the public from further crimes of the defendant; and (4) to provide the defendant with needed training, medical care, or other correctional treatment in the most effective manner. 18 U.S.C. § 3553(a)(2).

Additionally, § 3553 requires district courts to consider additional factors in imposing sentence; including: the nature and circumstances of the offense and the history and characteristics of the defendant; the kinds of sentences available; and, the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct. 18 U.S.C. § 3553(a)(1-7).

*Sentence Disparity*

The Court is aware that codefendant Cano-Flores (16) received a term of imprisonment of 420 months. This 35-year sentence was imposed by the Honorable Barbara Rothstein after the defendant exercised his right to a public jury trial and was found guilty. Mr. Gonzalez Duran respectfully submits that there must be separation between the his case/sentence, and a defendant that did not admit his guilt and did he accept responsibility.

In contrast, another codefendant, Lopez Falcon (25), did accept responsibility and pleaded guilty. Also sentenced by Judge Rothstein, this defendant was given a

11

216-month sentence. This 18-year sentence recognizes a defendant that accepted responsibility.

The Court also has guidance pursuant to Judiciary Sentencing Information (JSIN) data. As noted in the PSR, during the last five fiscal years (FY2020-2024), there were 22 defendants whose primary guideline was §2D1.1 and Powder Cocaine was the primary drug type, with a Final Offense Level of 43 and a Criminal History Category of I (excluding defendants who received a §5K1.1 substantial assistance departure). PSR, p.28¶169. For all 22 defendants who received a sentence of imprisonment in whole or in part, the average length of imprisonment imposed was 314 month(s) and the median length of imprisonment imposed was 294 month(s).

Mr. Gonzalez Duran respectfully submits that a sentence sufficient and just would be 24-years.

*Immigration Consequences*

As a citizen of Mexico, Mr. Gonzalez Duran will not be eligible for end-of-sentence re-entry programs or half-way house placement. Such an exclusion means that Mr. Gonzalez Duran's sentence will necessarily be harsher than an identical sentence imposed on a U.S. citizen. In light of the "fortuitous increase" in Mr. Gonzalez Duran's sentence, when compared with similarly sentenced non-deportable defendants, a downward departure is respectfully requested and appropriate. *United States v. Smith*, 27 F.3d 649 (307 U.S. App. D.C. 1994).

In addition, another level of severity in Mr. Gonzalez Duran's detention will come at the end of any sentence imprisonment imposed by this Court. This additional punishment will come in the manner of *continued detention pending immigration*

*removal proceedings* and deportation back to Mexico. The Pre-Sentence Report reflects that an immigration detainer has already been lodged against Mr. Gonzalez Duran. PSR, p.2. Undersigned counsel can represent to the Court that the time from the conclusion of a sentence of incarceration to deportation can average from 3-weeks to 6-weeks depending on a defendant's place of incarceration and eventual transfer location for deportation. Accordingly, further sentence mitigation is respectfully requested.

*Waive Imposition of Fine*

Mr. Gonzalez Duran has accepted responsibility for his actions. He has been imprisoned since November of 2008 and will probably spend additional time in jail. Accordingly, it is respectfully submitted that, consistent with the Presentence Report, the Court waive imposition of a fine. PSR, p.22¶137.

CONCLUSION

Based on the foregoing reasons and others that may be discussed with the Court at the sentencing hearing, Mr. Gonzalez Duran respectfully requests that the Court vary from the advisory sentence guideline recommendation and mitigate his sentence pursuant to statutory sentencing factors set forth in 18 U.S.C. §3553(a).

Therefore, for the authority and reasons set forth above, and in light of comparative sentences, we respectfully ask the Court to impose a term of incarceration of 24-years.

Filed this 30th day of May 2025.

                Respectfully submitted,

                RETURETA & WASSEM, P.L.L.C.

By:_____
    Manuel J. Retureta, Esq.
    District of Columbia Bar #430006
    300 New Jersey Avenue, NW, Suite 900
    Washington, D.C. 20001
    202-450-6119
    MJR@RETURETAWASSEM.COM

CERTIFICATE OF SERVICE

    I hereby certify that a copy of the foregoing filing was served upon counsel for all parties via electronic mail on this 30th day of May 2025.

By:_____
      Manuel J. Retureta, Esq.